STEELE *v.* FOWLER, MAYOR, ET AL.

[No. 16,649. Filed May 8, 1942.]

366

Arthur S. Wilson and Claude A. Smith, both of Princeton, for appellant.

Earl W. Kintner and S. L. Vandeveer, both of Princeton, for appellees.

BEDWELL, P. J.—The appellant, Clifford Steele, filed an action in the court below to enjoin the appellees from entering upon a portion of Chestnut street in the City of Princeton, Indiana, and removing or molesting a certain concrete wall and the concrete wings attached thereto that had been constructed therein by appellant's father and maintained therein by appellant and his father. The trial court at the request of the parties made a special finding of facts and stated conclusions of law thereon. These were favorable to appellees.

Appellant seeks to predicate error as arising from his exceptions to the conclusions of law and the overruling of his motion for a new trial. His first contention is that his exceptions to the conclusions of law should have been sustained because the special finding of facts required the trial court to draw the legal conclusion that the appellees were estopped from interfering with or molesting the particular structures.

This special finding showed that on the 28th day of March, 1814, one Robert M. Evans, as agent for Gibson County, Indiana, platted the original plan of the town, which is now the City of Princeton, Indiana. This plan or plat was recorded on such date in the recorder's office of such county, and among the lots so platted was one numbered as seventy-four (74). Streets were shown upon such plan or plat of a uniform width of sixty (60)

feet and one of such streets ran east and west and abutted upon the north line of Lot 74. This street is now known as Chestnut street, and it is intersected by two north and south streets, shown on such plat, which are now known as Prince street and Main street.

On the 1st day of March, 1904, Nellie C. Steele, the mother of appellant, became the owner by deed of conveyance of the east one-half (½) of the north half of such Lot 74. At that time she was the wife of Charles A. Steele, the father of appellant; and when title was obtained to such portion of such lot, Charles A. Steele entered into possession of the real estate and used it as a place of business for selling at retail, building materials, tile, feed, and coal. On April 3, 1933, Charles A. Steele and Nellie C. Steele conveyed such portion of such lot to appellant and he has been the owner thereof since such time.

For a great number of years a steam railway track has been constructed along that portion of Chestnut street that lies north of Lot 74, and about twenty-five (25) years ago a switch track connected thereto was constructed along or near the north property line of such Lot 74. After such lot was conveyed to Nellie C Steele, her husband constructed a wooden retaining wall along the north side of such switch track about ten (10) feet north of the north property line of Lot 74 and within the lines of Chestnut street. Attached to this retaining wall and extending north were wings, which with the retaining wall formed bins into which coal, sand, gravel, and building materials were unloaded from the railway cars upon such switch track. This wooden structure decayed, and about ten (10) years ago Charles A. Steele replaced the wooden retaining

wall and wings with a concrete structure in the same place and used for the same purpose.

For a number of years the north part of Chestnut street has been used by travelers, but because of the railway tracks and the structures heretofore described the south portion could not be used by wheeled vehicles. Before the commencement of the action, the city, by its officers, had served written notice upon appellant and Charles A. Steele to remove the side walls and wings attached to the concrete retaining wall so that particular portion of the street could be improved.

The trial court found as a fact that the father of appellant, Charles A. Steele, was the owner of the concrete retaining wall and the concrete side walls and wings that had been constructed by him in such street. The trial court does not find as a fact that the father of appellant placed such structures in the public street because the boundaries thereof were unknown, or through any mistake as to the location of the north property line of Lot 74, nor does the trial court find as a fact that any representations were made to appellant or his father by city officials which induced either of them to locate, construct, or maintain the particular structures. While appellant contends that there was evidence from which the trial court might have found such facts, or at least some of them, in considering exceptions to conclusions of law, we consider solely the facts as found by the trial court.

On appeal, all facts not embraced in the special finding will be regarded as not proved by the party having the burden of the issue; and the failure to find a fact essential to recovery is equivalent to a finding against the party having the burden of proving the same. *Universal Insurance Co.* v. *Glover* (1935),

100 Ind. App. 327, 195 N. E. 583. Clearly, the burden of the issue as to these matters was upon the appellant.

Title to property dedicated or devoted to a public use cannot be acquired by prescription or adverse possession as against the State or a county or, according to the weight of authority, a municipal corporation. 2 C. J. S., Adverse Possession, § 14, p. 528.

It has long been the established rule in this State that title by prescription cannot be acquired by adverse possession of land that has been platted and dedicated to the public for streets and alleys. Such a dedication is to the public and not to the municipality. The latter holds as trustee and cannot surrender the grant, except as the statute provides, nor lose the same by the negligence or laches of its officers. *Sims* v. *The City of Frankfort* (1881), 79 Ind. 446; *Cheek* v. *City of Aurora* (1883), 92 Ind. 107; *Wolfe* v. *Town of Sullivan* (1893), 133 Ind. 331, 32 N. E. 1017; *Hall* v. *Breyfogle* (1904), 162 Ind. 494, 70 N. E. 883; *City of Princeton* v. *Hanna* (1918), 187 Ind. 582, 113 N. E. 999, 120 N. E. 598; *Murray* v. *City of Huntingburg* (1918), 187 Ind. 504, 119 N. E. 209; *Swaim* v. *City of Indianapolis* (1930), 202 Ind. 233, 171 N. E. 871, 173 N. E. 287; *House-Wives League* v. *City of Indianapolis* (1933), 204 Ind. 685, 185 N. E. 511; *McRoberts* v. *Vogel* (1935), 100 Ind. App. 303, 195 N. E. 417.

The making of a plat of a town upon which streets and alleys are noted as such, and the recording of such plat and the sale of lots as designated thereon, operates as an irrevocable dedication to the public of all the streets and alleys that are marked on such plat, as far as purchasers of lots are concerned.

*Town of Woodruff Place* v. *Raschig* (1897), 147 Ind. 517, 46 N. E. 990; *Wolfe* v. *Town of Sullivan, supra;* *Hall* v. *Breyfogle, supra.*

The acts of proprietors in recognizing an unauthorized and invalid plat, recorded upon the proper public record, and selling lots or blocks in reference thereto and as marked thereon, is an adoption of such plat so far as to constitute a dedication to the public of streets and alleys indicated thereon, which is effectual as to lot purchasers. *Hall* v. *Breyfogle* (1904), 162 Ind. 494, pt. 2, on p. 500, and cases cited, 70 N. E. 883.

The failure of a municipal corporation to open and improve part of a new street does not operate as a rejection of the part not opened or improved. *Sims* v. *City of Frankfort, supra.* A material obstruction to a public street *per se* is a public nuisance and as against the author may be abated at any time. *City of Valparaiso* v. *Bozarth* (1899), 153 Ind. 536, 55 N. E. 439, 47 L. R. A. 487; *State* v. *Berdetta* (1880), 73 Ind. 185, 38 Am. Rep. 117. In the case of *House-Wives League* v. *City of Indianapolis, supra,* the Supreme Court says at p. 693 of 204 Ind.:

> "Neither title nor any other interest in a street can be gained from the fact that for more than 50 years a street or part thereof has been devoted to a purpose other than for public travel."

Appellant admits the force of these well established principles of law, but contends that the evidence was sufficient to create an equitable estoppel or estoppel *in pais* that would prevent the appellees from interfering with or molesting the particular structures. Appellant makes this contention under its claimed error in the conclusions of law, and as we have heretofore pointed out, this court on appeal cannot con-

sider the evidence in determining whether the trial court erred in any of its conclusions of law. No facts whatever were found which would form the basis for the application of the principles of equitable estoppel.

The doctrine of estoppel is not applicable to municipal corporations as freely and to the same extent that it is to individuals. When it is applied, the basis of application is usually not because of the nonaction of the officers of the municipality, but because they have taken some affirmative action influencing another, which renders it inequitable for the corporate body to assert a different set of facts. *State ex rel.* v. *Town of Hessville* (1921), 191 Ind. 251, 257, 131 N. E. 46, 132 N. E. 588; 19 Am. Jur., Estoppel, § 168, p. 820.

In *Cook* v. *Walling* (1889), 117 Ind. 9, 11, 19 N. E. 532, 533, 2 L. R. A. 769, 10 Am. St. Rep. 17, Judge Mitchell points out that:

"An estoppel *in pais* has for its foundation the proposition that a person *sui juris* has, by misrepresenting the truth, purposely induced another to believe in, and act upon, the existence of certain facts, which, if they were now made to appear different from what they were represented to be, would cause substantial injury to the person who acted on the faith of the representation."

In *Wolfe* v. *Town of Sullivan* (1893), 133 Ind. 331, 335, 32 N. E. 1017, the town brought an action against the appellants to abate an alleged nuisance which grew out of the building of a fence along the claimed boundary line of appellants' property, but which in truth extended a distance of ten feet into the platted portion of a public street of the town. An answer of appellants set up that the particular strip of land had been abandoned by the public as a part of the highway and that it had been fenced for a period of more than forty years prior to the commencement of the suit and from within

a few years after the town was laid out; and that the appellants had made valuable improvements in good faith with reference to the line of such fence, which would be lost to them in the event the town succeeded in its action. But the Supreme Court held that such an answer fell far short of averring facts sufficient to constitute an estoppel. It says: "When the facts are equally known *or accessible* to both parties, there can be no estoppel *in pais*." (Our italics.) In such case the plat of the town was recorded in a public record and the streets definitely located thereon. In this case the plan or plat of the town of Princeton had been a matter of public record for more than 100 years. Appellant had acquired title to a portion of Lot 74 by a deed in which the real estate was described as "the Northeast Quarter of Lot Seventy-four (74) in the Original Plan of the town (now city) of Princeton." There is nothing in the special finding or in the evidence that would create an estoppel *in pais* which would bar the city officials from taking steps to force removal of the obstructions in the street.

The second conclusion of law of the trial court ▪▪▪ was as follows:

"The plaintiff Clifford A. Steele acquired no right, title or interest in or to the part of Chestnut Street occupied by said concrete retaining wall, side wall and wings through or by virtue of the deed of conveyance made to him by Charles A. Steele and Nellie C. Steele, his wife, on the 3rd day of April, 1933, and recorded in Deed Record 103 on page 62."

Appellant, in particular, attacks this conclusion as being erroneous. He contends that this conclusion of law determines that he had no title to the land where the street was located by virtue of the deed from his father and mother. We think he has misconstrued the

force and effect of the determination by the trial court. No question as to the ownership of the fee simple title in the land to the center of the street was involved. The court merely determined that appellant had no right, title, and interest in the street as distinguished from the land where the street was located. This determination was correct. *House-Wives League* v. *City of Indianapolis* (1933), 204 Ind. 685, 185 N. E. 511; *Wolfe* v. *Town of Sullivan* (1893), 133 Ind. 331, 32 N. E. 1017.

Appellant also claims that the trial court erred in permitting appellees to introduce into evidence the notice that was served by the chief of police of Princeton upon appellant and upon Charles A. Steele and Nellie C. Steele, ordering them to vacate a portion of Chestnut street and informing them that unless they did so within five days the street commissioner would remove obstructions placed therein by them. Appellant claims no harm resulting to him from the introduction of such evidence. It seems to us that such evidence would tend to prove one of the essential allegations of plaintiff's complaint, and that is that the appellees would, unless enjoined by the court, remove and destroy the structures that were located in Chestnut street.

Appellant next attacks the action of the trial court in permitting the introduction into evidence of appellees' Exhibit 2. This was the plan or plat of the town of Princeton which was drawn by Robert M. Evans, as agent of Gibson County, on March 28, 1814, and on that date recorded in the office of the recorder of such county. The particular objection to the introduction of such record of such plat or plan was that it showed upon its face that it had been executed by a third person and that there was no showing that he had any interest in the real estate that was platted.

It should be noted that appellant claims the right to maintain its action for injunction because he was the owner of the northeast quarter of Lot 74 *in the original plan* of the town (now city) of Princeton.

Gibson County was formed out of a part of Knox County by virtue of an act adopted by the General Assembly or Legislature of Indiana Territory on March 9, 1813. A few days previous thereto, and on March 2, 1813, an act was passed by the territorial General Assembly which provided for the fixing of the seats of justice in all new counties thereafter to be laid out, and for the appointment of a county agent who was a resident of such county. This county agent was empowered to receive conveyances of land that might have been given or sold for the use of the county and to proceed to lay off the same into town lots, out-lots, streets, and alleys according to such plan as the judges of the court of common pleas might direct. He was further authorized, from time to time, to sell lots as the court might deem proper and necessary, and upon such terms as the court might deem advantageous to the county. He was an official of the county who gave bond and who had duties that were prescribed by law. See Vol. XX, Indiana Historical Collections, Laws of Indiana Territory, 1809-1816, by Ewbank & Riker, at pp. 325-329 and 348-350.

It is a well established principle that public officers are presumed to perform their official duties and that their official acts, in the absence of evidence to the contrary, are presumed to be regular. *Bailey v. Board, etc.* (1924), 81 Ind. App. 474, 143 N. E. 690. As was said by Judge Shake of the Supreme Court in the case of *Southern Indiana Gas & Electric Co.* v. *City of Boonville* (1939), 215 Ind. 552, 562, 20 N. E. (2d) 648: "Courts will presume that public officers will do

their duties and that public functions will be performed." In absence of evidence to the contrary, it is to be presumed that Robert M. Evans, as agent of Gibson County in the making of the plat in question, was carrying out his statutory duty as an official of such county.

It is a general rule that when a document appears to be at least thirty years old and is found in proper custody, and is unblemished by alterations and otherwise free from suspicion, it is admissible in evidence without proof of its execution. *Central, etc., R. Co.* v. *McMains* (1915), 58 Ind. App. 132, 107 N. E. 88; *Jeffersonville, Madison and Indianapolis Railroad Company* v. *Oyler* (1882), 82 Ind. 394, 402; *Henthorn* v. *Doe* (1822), 1 Blackf. 157..

The trial court did not err in permitting the introduction of such exhibit.

Judgment is affirmed.

NOTE.—Reported in 41 N. E. (2d) 678.