## THE CITY OF RICHMOND ET AL. *v.* SMITH.

[No. 18,187,  Filed September 16, 1897.]

MUNICIPAL CORPORATION.— *Market.*— *Nuisance.* — *Injunction.* — A property owner who owns the fee in a part of a street set apart by a city as a market place, and whose access to her lot is thereby appreciably impeded, and a nuisance created at her door, is entitled to injunctive relief against the maintenance of such market.

From the Wayne Circuit Court.  *Affirmed.*

*A. C. Lindemuth,* for appellants.

*R. A. Jackson, H. C. Starr* and *J. F. Robinson,* for appellee.

HOWARD, J.—This was an action brought by the appellee to enjoin the appellants, being the city of Richmond and Edwin O. Dunham, market master of said city, from maintaining a market place upon a public street adjoining her premises.

The facts were found by the court, and are not in dispute. They are substantially as follows: The appellee is the owner of a lot fronting 100 feet on North A street between Fourteenth and Fifteenth streets in the city of Richmond. Said street is a public highway eighty feet in width, with sidewalks each fourteen feet wide, leaving a roadway fifty-two feet in width. The sidewalks and roadway are graveled and macadamized, and the gutters bouldered. On July 16, 1894, the common council of the city, at a regular meeting, by resolution duly passed, designated the south side of North A street, between Fourteenth and Fifteenth streets, as and for a market place, and directed the appellant, Dunham, to hold public markets

thereat, on Tuesdays, Thursdays, and Saturdays of
each week, from the first day of June to the first day
of November in each year, and from 5 o'clock a. m. to 9
o'clock a. m. on each of said days. Such markets were
so held from July 21, 1894, until September 20, 1894,
when they were restrained by the court. No market
house or other structure, permanent or temporary,
was erected or attempted to be erected on said street.
The manner of holding the said market was to back
the market wagons to the curb, the horses attached
to the wagons facing the center of the street, the
teams being about three feet apart along the sidewalk.
Tables or temporary stands were stationed on the
sidewalk for the display of vegetables and other pro-
ducts. The south half and also a part of the north half
of North A street was left open for public travel.
After the market hours of each day the street was at
once cleaned up, and all refuse which had accumu-
lated was removed. No residences front on the part of
the street where the market was held, except that a
side door and window of appellee's house look out upon
said portion of said street. All the owners of lots
fronting on said market place, except appellee, con-
sented to the location of the market; but the market
was located and held without her consent, against her
wishes, and over her protest. The average number
of wagons on market days was about thirty-five, and
many people attended. The horses stamped and
neighed, also befouled the street and attracted great
numbers of flies. No legal proceedings of any kind,
except the resolution aforesaid, were ever had for the
appropriation of the street for such market, nor were
any compensation or damages ever paid or tendered
to appellee for such occupation of the street. The real
estate of appellee and the said market place are in the
residence part of the city. The occupants of appel-

The City of Richmond *et al. v.* Smith.

lee's house were disturbed in their rest and sleep by the arrival of the market gardeners and the opening of the market in the early morning hours. The court found as a conclusion of law that the appellee was entitled to the injunction prayed for by her, and judgment was entered accordingly.

No good reason can be given to show that the judgment should not be affirmed. The streets are primarily for the use of the traveling public. Certain other uses in which the public and the abutting property owners are interested are also allowed, but only in such manner and to such extent as may not appreciably impede the use for public travel. Such uses are those for sewers, gas, and water pipes, also telegraph and telephone lines. Provison, too, is made for shade trees along the curb and between the roadway and the sidewalks. No right, however, as we think, could be exercised by a city for such an occupancy of a public street as that which was here attempted.

It is true, that under clauses 11, 29, and 33 of section 3541, Burns' R. S. 1894 (3106, R. S. 1881), cities have power to establish and regulate public markets. But this can give no right to establish such markets in the streets of the city. The statute contemplates the use by the city of its own lands for the location of public markets. Such was the case in *City of Fort Wayne* v. *Shoaff*, 106 Ind. 66.

Reference is made to sections 3544-3546, Burns' R. S. 1894 (3107-3109, R. S. 1881), which provide that a market house may not be erected on a public street without the written consent of two-thirds of the owners of lots on such street opposite to the place where such market house is proposed to be constructed. Whether such a statute would be held valid so as to authorize such use of the street, particularly without the consent of all of the abutting property owners, we need

not inquire, inasmuch as no such case is here presented.

It is not necessary, as we think, to give reasons or cite authority to show that such a use of a public street as contemplated in the case before us, cannot be authorized. Appellee's fee simple right in the street was taken for uses not authorized by law, the access to her lot was appreciably impeded, and a nuisance was created at her door. She was therefore injured in a manner different in kind and in degree from the general public, and hence had a right to maintain the action brought by her.

Judgment affirmed.